UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KELVIN HERNANDEZ-MENDOZA,<br><br>                      Petitioner,<br><br>   v.<br><br>MERRICK B. GARLAND, *et al.*,<br><br>                      Respondents. | Case No. C21-1419-RSL-MLP<br><br>REPORT AND RECOMMENDATION |

## I.    INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Kelvin Hernandez-Mendoza is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from detention or a bond hearing, on the grounds that his prolonged detention by ICE, now at approximately 48 months, violates his due process rights. (Pet. (dkt. # 7).) The Government has filed a return memorandum (Ret. (dkt. # 12)), and Petitioner filed a response (Resp. (dkt. # 13)). The briefing is complete, and this matter is now ripe for review. The Court, having considered the parties' briefs, the exhibits submitted in support thereof, and the balance of the record, concludes that Petitioner's federal habeas petition (dkt. # 7) should be denied and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

## II. BACKGROUND

### A. Immigration Proceedings

Petitioner is a native and citizen of Honduras who entered the United States on September 6, 2017, on a nonimmigrant student visa to study at the University of Oregon. (Ret., Ex. A (Annett Decl. (dkt. # 12-1) at ¶ 3); Pet. Decl. (dkt. # 7-2) at 2-3.) On February 21, 2018, an ICE Deportation Officer encountered Petitioner at the Lane County Jail in Eugene, Oregon, where he was confined after being arrested for sexual abuse in the second degree. (Annett Decl. at ¶ 4.) Subsequent records checks revealed that Petitioner had violated the terms and conditions of his nonimmigrant student visa because he had been expelled from the University of Oregon. (*Id.*)

On April 13, 2018, ICE took custody of Petitioner upon his release from the Lane County Jail. (Annett Decl. at ¶ 5; Pet. Decl. at 3.) On April 16, 2018, ICE served Petitioner with a Notice to Appear ("NTA"), charging him with inadmissibility pursuant to 8 U.S.C. § 1227(a)(1)(C)(i) for failing to comply with the conditions of his nonimmigrant student visa. (*Id.*) Shortly thereafter, Petitioner was transferred to NWIPC. (*See id.*) On July 5, 2018, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). (Annett Decl. at ¶ 7.) At the request of Petitioner's counsel, a hearing on Petitioner's applications for relief was delayed for many months, apparently so that Petitioner's criminal proceedings could first be resolved. (*See id.* at ¶¶ 7, 9; Pet. Decl. at 4.)

On January 9, 2019, Petitioner was transferred from NWIPC back to Lane County, Oregon, for purposes of resolving his pending state court criminal charges. (*See* Annett Decl. at ¶ 10.) On August 9, 2019, Petitioner entered pleas of guilty to charges of sexual abuse in the second degree in violation of Or. Rev. Stat. § 163.425, and coercion in violation of Or. Rev. Stat.

§ 163.275, in the Circuit Court of the State of Oregon, Lane County. (*Id*. at ¶ 11; *see also* Ret., Ex. C at 3-4.) Petitioner was sentenced to eleven months on each charge, and the sentences were ordered to be served consecutively. (*Id*.) On August 14, 2019, Petitioner was transferred from the custody of the State of Oregon, back into the custody of ICE at NWIPC to continue with his removal proceedings. (*See* Annett Decl. at ¶ 12.)

On December 3, 2019, the immigration judge ("IJ") issued a decision in Petitioner's removal proceedings. (Ret., Ex. C.) The IJ determined that Petitioner's Oregon conviction for sexual abuse in the second degree constituted a "particularly serious crime" and that Petitioner was therefore ineligible for asylum and withholding of removal. (*Id*. at 2-9.) The IJ also concluded that Petitioner was not eligible for deferral of removal under the CAT, and ordered Petitioner removed to Honduras. (*Id*. at 9-17.) Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), and on May 8, 2020, the BIA affirmed the IJ's decision and dismissed the appeal. (*See* Ret., Ex. D.)

On May 14, 2020, the Honduran Consulate of Seattle issued a travel document for Petitioner and ICE scheduled Petitioner for removal on May 19, 2020. (Annett Decl. at ¶ 17.) On May 18, 2020, Petitioner filed a petition for review of the BIA's decision with the Ninth Circuit Court of Appeals, and the Ninth Circuit granted Petitioner a temporary stay of removal. *See Hernandez-Mendoza v. Garland*, No. 20-71390, Dkt. # 1 (9th Cir. Mar. 17, 2022). Petitioner's scheduled removal was cancelled upon entry of the stay. (Annett Decl. at ¶ 18.)

On March 17, 2022, the Ninth Circuit denied Petitioner's petition for review. *Hernandez-Mendoza*, No. 20-71390, Dkt. # 46. Petitioner filed a petition for rehearing in the Ninth Circuit on March 31, 2022, which remains pending at this time. *Id*., Dkt. # 47. The Ninth Circuit's stay of removal will remain in place until issuance of the mandate. *Id*., Dkt. # 9.

REPORT AND RECOMMENDATION
PAGE - 3

B. **Bond Hearings/Custody Review**

On August 4, 2018, Petitioner requested a bond hearing before an IJ, and a hearing was held on August 14, 2018. (Annett Decl. at ¶ 8.) Petitioner, who was represented by counsel at the hearing, submitted an extensive evidence packet which included an investigation conducted by his public defender in his pending criminal case. (*Id*.) The Department of Homeland Security ("DHS") also submitted an extensive evidence packet which included the police investigation and text messages between Petitioner and the alleged victim of the sexual assault. (*Id*.) The IJ denied Petitioner's request for bond, concluding that he was a danger to the community. (*Id*.; Ret., Ex. B.) Petitioner reserved his right to appeal the IJ's bond decision to the BIA, but ultimately did not pursue an appeal. (*See id*.)

On February 20, 2020, while his appeal of the IJ's decision in his removal proceedings was pending before the BIA, Petitioner filed a one-page motion requesting a second bond hearing before an IJ. (Annett Decl. at ¶ 14.) On February 24, 2020, the IJ denied Petitioner's motion because Petitioner failed to submit any evidence in support of the motion showing changed circumstances, as required by 8 C.F.R. § 1003.19. (*Id*.) Petitioner appealed the IJ's decision to the BIA, and the BIA dismissed the appeal on July 23, 2020. (*Id*. at ¶¶ 14, 22.)

On June 30, 2020, Petitioner submitted a request for parole to the ICE Seattle Field Office which was denied because ICE determined that Petitioner was both a flight risk and a danger to the community. (Annett Decl. at ¶ 20.) ICE also conducted post order custody reviews of Petitioner on August 17, 2020, and again on August 12, 2021, and determined on both occasions that Petitioner should remain in custody because he was a danger to public safety. (*Id*. at ¶¶ 21, 23.)

REPORT AND RECOMMENDATION
PAGE - 4

### C. First Federal Habeas Action

On September 10, 2020, Petitioner filed a petition for writ of habeas corpus in this Court challenging his ongoing detention in ICE custody. *See Hernandez-Mendoza v. Barr*, C20-1348-RSM, Dkt. # 1. Petitioner asserted therein, as he does here, that his prolonged detention in ICE custody violated his constitutional rights, and he requested that he be released or that he be granted another bond hearing. *Id.*, Dkt. # 6 at 2. In his declaration submitted in support of his petition, Petitioner also claimed that he should be released due to the impact of COVID-19 on the conditions of his confinement at NWIPC. *Id.*, Dkt. # 6-2 at 4-5. On November 23, 2020, U.S. Magistrate Judge Brian A. Tsuchida issued a Report and Recommendation recommending that Petitioner's federal habeas petition be denied and that the action be dismissed with prejudice. *Id.*, Dkt. # 13. Magistrate Judge Tsuchida concluded therein that neither Petitioner's prolonged detention nor the conditions at NWIPC violated Petitioner's rights. *See id.* On December 18, 2020, Chief U.S. District Judge Ricardo S. Martinez adopted the Report and Recommendation and dismissed the case with prejudice. *Id.*, Dkt. # 14.

### D. COVID-19 at NWIPC

NWIPC has protocols in place to manage COVID-19 within the facility which include policies and procedures governing screening, testing, isolation, treatment, vaccinations, and protections for detainees with underlying medical conditions. (*See* Ret., Ex. E (Malakhova Decl. at ¶¶ 5-42).) Petitioner was identified as a detainee who was potentially at higher risk for severe illness due to COVID-19, initially for bradycardia, and subsequently for having a body mass index ("BMI") over 25. (*Id.* at ¶ 43.) Petitioner's case was therefore referred to ICE Enforcement and Removal Operations ("ERO") for a custody redetermination. (*Id.*) Petitioner has received four such custody redeterminations pursuant to the class action order in *Fraihat v. ICE,* 445

F.Supp.3d 751 (C.D. Cal. Apr. 20, 2020). (Annett Decl. at ¶¶ 15, 24-26.) On all four occasions—April 30, 2020, November 20, 2020, October 21, 2021, and November 21, 2021—ICE determined that Petitioner's continued detention was necessary because he posed a danger to the community. (*See id*.)

Petitioner was offered the COVID-19 vaccine on April 1, 2021, and again on May 12, 2021, and declined the vaccine against medical advice on both occasions. (Malakhova Decl. at ¶ 44.) On August 9, 2021, Petitioner received a positive test result for COVID-19, was experiencing COVID-19 symptoms, and was placed in medical isolation. (*Id*. at ¶ 45.) On August 13, 2021, Petitioner continued to have COVID-19 symptoms and, because he was at a higher risk for adverse COVID-19 effects, he was offered monoclonal antibody infusion treatment. (*Id*. at ¶ 46.) Petitioner agreed to proceed with the treatment and responded well. (*Id*.) Petitioner was released from the medical housing unit on August 18, 2021, and was displaying no COVID-19 symptoms at that time. (*Id*.)

Petitioner was offered the available vaccine again on January 30, 2022, and he again declined. (Malakhova Decl. at ¶ 44.) According to Petitioner, he declined vaccination because the Johnson and Johnson vaccine was the only one being offered and he was only willing to receive a Pfizer or Moderna vaccine. (Resp. at 12.) Petitioner indicates that the Moderna vaccine was recently made available at NWIPC and he is currently waiting his turn to receive it. (*Id*.)

Petitioner continues to receive care for other medical issues at NWIPC. (Malakhova Decl. at ¶ 47.) In particular, Petitioner is being monitored for elevated blood sugar with pre-diabetes, elevated weight, and elevated cholesterol. (*Id*.) He is also receiving care for pre-existing chronic right knee pain, routine dental care, a prescribed low sugar diet, and medication management. (*Id*.) Petitioner is receiving an oral glucose lowering medication twice a day, ibuprofen 600 mg

as needed, topical menthol salicylate joint cream as needed, a daily multivitamin, and a vitamin D supplement daily. (*Id.*)

### III.   DISCUSSION

#### A.   Petitioner is Not Entitled to Release

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of non-citizens, such as Petitioner, who are in removal proceedings. 8 U.S.C. § 1226; *see also Demore v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."). Section 1226(a) grants DHS the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.[1] 8 U.S.C. § 1226.

When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an IJ. 8 C.F.R. § 236.1(d)(1). At the bond redetermination hearing, the burden is on the detainee to show to the satisfaction of the IJ that he warrants release on bond. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). An IJ must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION
PAGE - 7

otherwise a poor bail risk." *Id.* (citing *In re Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)). Among the discretionary factors an IJ may consider in making a bond decision under § 1226(a) is the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses. *Id.*

If the IJ denies bond, the detainee may appeal to the BIA. 8 C.F.R. § 236.1(d)(3). If the BIA affirms the IJ's decision, the detainee may seek habeas relief from the district court. *Leonardo v. Crawford*, 646 F.3d 1157, 1159-61 (9th Cir. 2011); *Sun v. Ashcroft*, 370 F.3d 932, 941 (9th Cir. 2004). Federal district courts have jurisdiction to review bond hearing determinations for constitutional claims and legal error, *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), but they cannot second guess an IJ's discretionary judgment regarding the application of § 1226(a), 8 U.S.C. § 1226(e). Once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e).

The parties agree that Petitioner is currently detained pursuant to § 1226(a).[2] A noncitizen detained under § 1226(a) is entitled to release only if he can show that his detention is indefinite within the meaning of *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1062-63 (2008). In *Prieto-Romero*, the Ninth Circuit held that the petitioner's detention was not indefinite because the government could repatriate him to Mexico

---

[2] As the Government explains in its return, even though Petitioner has two serious criminal convictions, he is not being detained under the mandatory detention provisions of 8 U.S.C. § 1226(c) because the DHS charged Petitioner with being subject to removal not based upon his criminal convictions but, instead, based upon his failure to maintain his nonimmigrant status after having been expelled from the University of Oregon. (*See* Ret. at 9 n.4.)

REPORT AND RECOMMENDATION
PAGE - 8

if his petition for review was unsuccessful. *Id.* The Government has presented evidence that it can and will repatriate Petitioner to Honduras if he is ultimately ordered removed. (Ret. at 11; Annett Decl. at ¶¶ 17, 29.) Accordingly, Petitioner's removal is not indefinite, and he is not entitled to release on this basis.

### B.  Due Process Does Not Require that Petitioner Receive a Bond Hearing

Petitioner also seeks another bond hearing. Until recently, Ninth Circuit jurisprudence required noncitizens detained under § 1226(a) to be provided automatic bond hearings every six months at which the government was required to justify continued detention by clear and convincing evidence. *Rodriguez v. Robbins*, 804 F.3d 1060, 1084-85, 1087 (9th Cir. 2015) ("*Rodriguez III*"), *rev'd sub nom Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). The Supreme Court reversed, explaining that the Ninth Circuit had misapplied the canon of constitutional avoidance and that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of" periodic bond hearings where the government bears the burden. *Jennings*, 138 S. Ct. at 847. The Supreme Court did not decide whether the Constitution requires such periodic hearings and remanded to the Ninth Circuit for consideration of that question.[3]

This Court concludes, on the facts of this case, that due process does not require an additional bond hearing at the present time. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). To determine the requirements of due process, courts consider (1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been provided in the particular situation before the court. *Id.* at 334-35; *see also*

---

[3] The Ninth Circuit subsequently remanded to the district court. *Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018) ("*Rodriguez IV*").

REPORT AND RECOMMENDATION
PAGE - 9

*Lopez Reyes v. Bonnar*, 362 F.Supp.3d 762, 775 (N.D. Cal. 2019) ("In the absence of binding authority establishing a categorical right to a periodic bond hearing, the Court must conduct an individualized due process analysis pursuant to the conventional [*Mathews*] factors.") (internal quotation marks omitted); *Almaliki v. ICE Field Office Dir.*, 2020 WL 5238603, at *3 (W.D. Wash. Aug. 10, 2020), *Report and Recommendation adopted*, 2020 WL 5231324 (W.D. Wash. Sept. 2, 2020) (applying *Mathews* due process analysis to determine whether due process required subsequent bond hearing); *Madrigal v. Nielsen*, 2018 WL 4732469, at *3 (W.D. Wash. Aug. 31, 2018), *Report and Recommendation adopted*, 2018 WL 4700552 (W.D. Wash. Oct. 1, 2018) (same).

Petitioner's freedom from detention is at stake, which is an important interest that "lies at the heart of the liberty that [the Due Process] Clause protects." *Rodriguez III*, 804 F.3d at 1066. Petitioner has been detained since April 2018, and it has been over three and a half years since his last bond hearing. (*See* Annett Decl. at ¶ 8.) This is no doubt a significant period of detention. However, the Government also has legitimate interests that are implicated by Petitioner's continued detention: assuring he will appear if ultimately ordered removed and protecting the public from him given his criminal history. *See Soto v. Sessions*, 2018 WL 3619727, at *4 (N.D. Cal. July 30, 2018) (citing 8 C.F.R. § 236.1(c)(8) (allowing release from detention if noncitizen "is likely to appear for any further proceeding" and "would not pose a danger to property or persons"); *Zadvydas*, 533 U.S. at 690-91).

Petitioner was convicted of sexual assault and coercion involving an 18-year-old college student. (*See* Ret., Ex. C at 4.) This conviction was obtained during the pendency of Petitioner's removal proceedings and is therefore relatively recent. Petitioner entered a guilty plea to the charges filed against him in the State of Oregon, and in so doing, admitted he had knowingly

subjected his victim to anal intercourse without her consent. (*Id*. at 3, 6-8.) The IJ, in rejecting Petitioner's applications for withholding of removal, explained that it had "no difficulty whatsoever . . . finding and concluding that this horrible, brutal crime against a young woman by someone who is basically a stranger or someone she only knew for a couple of hours is very serious." (*Id*. at 8.) Petitioner's convictions support the Government's position and effectively counter Petitioner's claim that he does not pose a danger to the community.

As to the third factor, Petitioner has already received one individualized bond hearing before an IJ who, as noted above, found that Petitioner presents a danger to the community. (Annett Decl. at ¶ 8.) The IJ rendered this decision after having been provided extensive evidence related to Petitioner's then pending criminal case by both Petitioner, through counsel, and the Government. (*Id*.) Petitioner clearly disagrees with the conclusion that he presents a danger to the community and goes so far as to suggest in these proceedings that he was not actually guilty of the offenses to which he pled guilty and only entered a guilty plea because his defense counsel recommended that he do so. (Resp. at 9-10, 17.) However, he presents no evidence demonstrating that the IJ committed constitutional or legal error in denying his request for bond. Petitioner could have appealed the IJ's decision to the BIA but elected not to do so.

A year and a half after his first bond hearing, Petitioner requested a second hearing. (Annett Decl. at ¶ 14.) Petitioner failed, however, to submit any evidence in support of his request showing a material change in circumstances as he was required to do to demonstrate an entitlement to a bond redetermination. (*Id*.) The IJ therefore denied Petitioner's motion. (*Id*.) On this occasion Petitioner did seek review by the BIA, but his appeal was denied. (*Id*.) While Petitioner appears to complain about the rapidity with which the IJ dispatched his request for a second hearing (*see* Pet. at 4), he does not dispute that he failed to identify any change of

REPORT AND RECOMMENDATION
PAGE - 11

circumstances that would have supported his request for a second hearing under the applicable regulations.

Weighing the three *Mathews* factors in light of the current record, the Court concludes that Petitioner has received all of the due process protections to which he is entitled at this time. Although Petitioner has been detained for a prolonged period of time and has not received a bond hearing in over three and a half years, he fails to identify any change in his circumstances that might warrant a different bond determination. *See Lopez Reyes*, 362 F.Supp.3d at 777 (granting subsequent bond hearing based on evidence of a "material change in circumstances coupled with the passage of time," and noting that the court was "*not* making a finding that the mere passage of time requires a second bond hearing") (emphasis in original).

### C.   Petitioner Is Not Entitled to Release or a Bond Hearing due to COVID-19

Aside from Petitioner's reliance on the passage of time, he offers only his recovery from COVID-19 and the fact that he remains at higher risk of serious illness due to COVID-19 while confined at NWIPC as circumstances which he maintains warrant another bond hearing. (Pet. at 2; Resp. at 5-6.) The Government argues that Petitioner is not entitled to release based on COVID-19, because Petitioner has not established that he is confined under conditions that violate his rights. (Ret. at 20-24.) The Government submitted in support of its return the declaration of Dr. Malakhova, the Clinical Director for ICE Health Services Corps ("IHSC") at NWIPC, which details the protocols in place to attempt to prevent introduction of COVID-19 into the general population at NWIPC and to prevent the spread of the virus should it be introduced. (*See* Malakhova Decl. at ¶¶ 5-30.) Dr. Malakhova also details in her declaration the availability of vaccines at NWIPC and the availability of various treatment options that can reduce the likelihood of serious illness. (*Id*. at ¶¶ 31-42.)

REPORT AND RECOMMENDATION
PAGE - 12

Petitioner cites to the fact that he contracted COVID-19 as suggestive of NWIPC's inability to keep him safe. It is notable, however, that despite Petitioner's higher risk of serious illness due to COVID-19, he declined COVID-19 vaccinations on two occasions in April and May of 2021, against medical advice, before contracting COVID-19 in August 2021. (Malakhova Decl. at ¶ 44.) When Petitioner did contract COVID-19, he was administered monoclonal antibody treatment, and he responded well to such treatment. (*Id*. at ¶ 46.) Petitioner claims that his pre-existing knee condition worsened after he contracted COVID-19 because one of the symptoms he experienced was weakness in his joints, and that he continues to have issues using the stairs. (Resp. at 5.) However, a summary of a health exam conducted by an IHSC provider on October 21, 2021, which Petitioner submitted in support of his petition, appears to refute Petitioner's assertion. (*See* dkt. # 7-1 at 8-9.) The summary reflects that Petitioner presented at sick call with complaints of right knee pain, but he denied experiencing any pain except when walking downstairs, and he denied experiencing any weakness in his joints. (*Id*.) Petitioner was diagnosed with patellar tendinitis and a treatment plan was established. (*Id*. at 9.)

While Petitioner asserts that he remains at a higher risk of serious illness due to COVID-19 so long as he is confined at NWIPC, his plan to now receive a vaccination will presumably ameliorate some of that risk. Moreover, the record demonstrates that NWIPC has taken significant action to address the impact of COVID-19 within the facility and, as Petitioner's own experience suggests, NWIPC has the capacity to effectively treat detainees such as Petitioner who are at higher risk of serious illness due to COVID-19. In sum, Petitioner has not demonstrated that the conditions of his confinement at NWIPC violate his rights, nor has he established that his recovery from COVID-19, or the potential risk of future exposure to

REPORT AND RECOMMENDATION
PAGE - 13

COVID-19 at NWICP, constitute a material change in circumstances that would warrant a different bond determination.

Likewise, Petitioner's suggestion in this federal habeas action that he was not actually guilty of the serious criminal offenses of which he was convicted, and that he is therefore not a danger to the community, does not warrant a different bond determination. Notably, when the IJ denied Petitioner's first request for bond, Petitioner had been charged with, but not yet convicted of, the charges relating to his sexual assault of a fellow college student. Petitioner subsequently pled guilty to the offenses and received a 22-month sentence. While this arguably constitutes a change in circumstances, it is not one which inures to Petitioner's benefit.

### IV.   CONCLUSION

For the foregoing reasons, this Court recommends that Petitioner's petition for writ of habeas corpus (dkt. # 7) under § 2241 be DENIED and that the petition be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 13, 2022**.

//

//

//

REPORT AND RECOMMENDATION
PAGE - 14

DATED this 19th day of April, 2022.

_____
MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 15